IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DAVID M. RUSH, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-26-2783 |
| TEXTRON SYSTEMS CORPORATION, | * | |
| Defendant. | * | |

***

**MEMORANDUM OPINION**

Pending before the Court is Defendant Textron Systems Corporation's ("Textron") Motion to Dismiss (ECF No. 7). The Motion is ripe for disposition and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons outlined below, the Court will grant the Motion.

## I. BACKGROUND[1]

Self-represented Plaintiff David M. Rush worked for Textron as a Senior Information Security Officer at its facility in Hunt Valley, Maryland, from July 2022 until Textron terminated his employment on May 10, 2023. (Compl. ¶¶ 1, 4, 7, ECF No. 3). At Textron, Rush was responsible for ensuring compliance with the Department of Defense ("DoD") National Industrial Security Program Operating Manual and security requirements imposed by the National Institute of Standards and Technology. (Id. ¶ 4). In late 2022 and early 2023, Rush states, he made "protected disclosures" to his supervisors

[1] Unless otherwise noted, the Court takes the following facts from the Complaint (ECF No. 3) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

about "compliance and security deficiencies." (Id. ¶ 5). On November 15, 2022, Rush received a Letter of Counseling for alleged performance issues. (Id. ¶ 6). Rush submitted a written response on November 21, 2022. (Id.). On May 10, 2023, Textron terminated Rush for "alleged 'timesheet fraud' or discrepancies." (Id. ¶ 7). Rush claims that his termination was "pretextual and in direct retaliation for the protected disclosures" he made to his supervisors. (Id.).

On April 14, 2026, Rush filed a complaint with the DoD Office of the Inspector General ("OIG") under 10 U.S.C. § 4701, alleging unlawful retaliation. (Id. ¶¶ 10, 12). On May 8, 2026, he filed a Complaint against Textron with the Circuit Court for Carroll County, Maryland, alleging wrongful discharge in violation of public policy (Count I) and defamation per se (Count II). (Id. at 3–5).[2] According to Rush, the OIG investigation is ongoing. (Id. ¶ 10).

Textron removed the action to this Court on July 15, 2026. (ECF No. 1). On July 22, 2026, Textron filed a Motion to Dismiss Rush's Complaint. (ECF No. 7). Rush opposed Textron's Motion on August 3, 2026. (ECF No. 10). In his Opposition, Rush voluntarily dismissed his defamation claim. (See Pl.'s Opp'n Def.'s Mot. Dismiss ["Opp'n"] at 1–2, ECF No. 10). On August 18, 2026, Textron replied to Rush's Opposition. (ECF No. 13).

---

[2] Citations to page numbers refer to the pagination assigned by the court's Case Management/Electronic Case Files ("CM/ECF") system.

## II. DISCUSSION

### A. Standards of Review

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2) or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, accept the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005). But the court need not accept unsupported or conclusory factual allegations devoid

of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

Pro se pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Nonetheless, "[w]hile pro se complaints may 'represent the work of an untutored hand requiring special judicial solicitude,' a district court is not required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" Weller v. Dep't of Soc. Servs. for Balt., 901 F.2d 387, 391 (4th Cir. 1990) (quoting Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985)). Further, "[t]he Court cannot act as a pro se litigant's 'advocate and develop, sua sponte, statutory and constitutional claims' that the litigant failed to raise on the face of the complaint." Branch v. Machen, No. 3:14-CV-708, 2014 WL 6685497, at *2 (E.D.Va. Nov. 25, 2014) (quoting Newkirk v. Circuit Court of Hampton, No. 3:14-CV-372, 2014 WL 4072212, at *1 (E.D.Va. Aug. 14, 2014)).

**B. Analysis**

Rush raises a single claim of wrongful termination, alleging that Textron terminated him "in retaliation for his protected disclosures" and that his termination therefore violated both the Defense Contractor Whistleblower Protection Act ("DCWPA") and Maryland public policy. (See Compl. at 3–4). The Court first addresses Rush's claim that Textron violated the DCWPA when it terminated his employment and then turns to his claim of wrongful discharge in violation of Maryland public policy.

**1. DCWPA**

In United States ex rel. Cody v. ManTech International, Corporation, 746 F.App'x 166 (4th Cir. 2018), the United States Court of Appeals for the Fourth Circuit described the protections provided under 10 U.S.C § 4701[3] to employees of defense contractors who report certain forms of misconduct:

> "The DCWPA prohibits retaliation against employees of defense contractors who report certain types of misconduct. See 10 U.S.C. [§ 4701(a)(1)]. Under this statute, "[a]n employee of a contractor [or] subcontractor . . . may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing . . . information that the employee reasonably believes is evidence of . . . [g]ross mismanagement," "gross waste of Department funds," "abuse of authority," or "a violation of law, rule, or regulation related to" a Department of Defense contract or grant. Id. Protection under the DCWPA covers disclosures to "[a] Member of Congress," "[a]n Inspector General," and "[a] management official or other employee of the contractor . . . who has a responsibility to investigate, discover, or address misconduct," among others. 10 U.S.C. [§ 4701(a)(2)].

United States ex rel. Cody, 746 F.App'x at 178.

The Fourth Circuit has recognized that, to establish a prima facie case of unlawful retaliation under 10 U.S.C. § 4701, "a whistleblower plaintiff must establish that: (1) he engaged in protected activity; (2) his employer knew or was reasonably on notice that he was engaged in protected activity; and (3) his employer took adverse action against him as a result of his protected activity." Greer v. Gen. Dynamics Info. Tech., Inc., 808 F.App'x

---

[3] The Fourth Circuit's opinion refers to 10 U.S.C. § 2409, which was officially renumbered and reclassified as 10 U.S.C. § 4701 effective on January 1, 2022.

191, 193 (4th Cir. 2020) (quoting United States ex rel. Cody v. ManTech Int'l Corp., 207 F.Supp. 3d 610, 621 (E.D.Va. 2016), aff'd, 746 F.App'x 166 (4th Cir. 2018)).

Section 4701 of the DCWPA provides a framework for DoD employees to resolve claims for wrongful termination. See 10 U.S.C. § 4701(a)(1). An employee of a DoD contractor may submit a complaint to the OIG within three years of an alleged retaliatory act by their employer. Id. § 4701(b)(4). The Inspector General has up to 180 days to make a determination on the complaint, with a possible extension up to an additional 180 days with the agreement of the person filing the complaint. Id. § 4701(b)(2)(A)–(B). The head of the DoD has thirty days after receiving the Inspector General's report of the findings of the investigation to inform the employee and Inspector General of its decision as to whether there is sufficient basis to conclude that the contractor subjected the complainant to a prohibited reprisal. Id. § 4701(c)(1). Remedy for a prohibited reprisal may entail reinstatement, compensatory damages, employment benefits, or disciplinary or corrective actions. Id. § 4701(c)(1). If the DoD head denies relief or fails to act within 210 days of the submission of the complaint, the complaint is considered administratively exhausted and the employee may bring a de novo action at law or equity in federal court against the contractor for relief. Id. § 4701(c)(3).

Here, Rush submitted his unlawful retaliation complaint to the DoD OIG on April 14, 2026. (Compl. ¶ 10). The DoD OIG had 180 days from Rush's submission of his complaint to report its findings to Rush, Textron, and the head of the DoD at the conclusion of its review, or until October 11, 2026, unless Rush agreed to an extension. See 10 U.S.C. § 4701(b)(2)(A)–(B). The DoD has thirty days to determine how to resolve the dispute

after it receives the Inspector General's report. See id. § 4701(c)(1). Only if the DoD head denies Rush relief or fails to act within 210 days after the submission of Rush's complaint will he be entitled to bring a de novo action in this Court for relief. See id. § 4701(c)(3). Because nothing in the record shows that Rush has received notice from the DoD head that his complaint was denied or that the 210-day deadline has expired, his complaint has not been administratively exhausted.

Even if Rush had administratively exhausted his claim, however, it would still be subject to dismissal for failure to state a claim under Maryland law.

**2. Wrongful Discharge in Violation of Maryland Public Policy**

"Maryland law recognizes wrongful termination claims, known as abusive discharge claims, for at-will employees whose termination 'contravenes some clear mandate of public policy.'" Ruyter v. Maryland CVS Pharmacy, LLC, No. TDC-14-2541, 2015 WL 759425, at *3 (D.Md. Feb. 20, 2015) (quoting Adler v. Am. Standard Corp., 432 A.2d 464, 473 (Md. 1981)). Maryland courts have held that "[a]busive discharge claims, however, are limited to instances that otherwise would not be vindicated by a statutory remedy." Id. (citing Makovi v. Sherwin-Williams Co., 561 A.2d 179, 180 (Md. 1989)). As the Fourth Circuit has noted, "the purpose of the wrongful discharge cause of action is to provide a cause of action for unremedied violations of public policy where a remedy does not exist." Owen v. Carpenters' Dist. Council, 161 F.3d 767, 774 (4th Cir. 1998). To clarify, "[t]he tort is designed to fill gaps in statutory coverage: When a plaintiff is terminated in a way that violates some public policy, but there is no statute protecting against such conduct, then the plaintiff may bring an abusive discharge claim to remedy

the harm." Ruyter, 2015 WL 759425, at *3. In summation, "[w]hen a plaintiff has an available remedy under a federal or state statute . . . there is no need to file a wrongful termination claim, and the plaintiff is precluded from doing so." Id.

Here, Textron asserts that Rush fails to state a claim for wrongful discharge in violation of public policy because he fails to identify a clear mandate of Maryland public policy that it allegedly violated by terminating his employment. (Def.'s Mot. Dismiss Pl.'s Compl. at 2, ECF No. 7). Additionally, Textron contends that Rush's wrongful discharge claim does not state a cognizable claim under Maryland law because a remedy already exists under 10 U.S.C. § 4701. (Id. at 1–2). Textron contends that, because Rush can bring an unlawful termination claim under the DCWPA, which "provides an administrative process, substantial remedies, and an eventual federal cause of action," he is precluded from bringing a wrongful discharge claim under Maryland law. (Id.). Rush counters that (1) his allegations state a coherent claim under Maryland law, and (2) the mandated process overseen by the DoD OIG under 10 U.S.C. § 4701 does not supply an adequate and appropriate civil remedy for his alleged wrongful discharge because it does not afford him the opportunity to develop the factual record through civil discovery, thereby leaving him without any practical means of investigating and presenting the full circumstances of his termination. (Opp'n at 3–5).

The Court need not decide whether Rush has identified a clear and particularized mandate of Maryland public policy that Textron has allegedly violated, because it agrees with Textron that Rush has failed to show that the administrative process under 10 U.S.C. § 4701 does not provide an adequate and appropriate civil remedy for addressing his

claims. Even if the administrative process does not provide Rush with the opportunity to develop a record through civil discovery, if the head of the DoD denies his claim or fails to timely respond, Rush will have the opportunity to conduct civil discovery by bringing a civil claim in this Court. 10 U.S.C. § 4701(c)(3).

Accordingly, the Court finds that Rush's Complaint fails to state a claim for wrongful discharge in violation of Maryland public policy and will grant Textron's Motion to Dismiss.

## III. CONCLUSION

For the foregoing reasons, the Court will grant Textron's Motion to Dismiss (ECF No. 7). A separate Order follows.

Entered this 30th day of October, 2026.

/s/
George L. Russell, III
Chief United States District Judge